The judgment appealed from is affirmed, at appellant's costs.

---

(35 South. 380.)

No. 14,939.

STATE v. HALLIDAY.

(Nov. 16, 1903.)

CRIMINAL LAW—TRIAL—REMARKS OF PROSECUTING ATTORNEY—MURDER—EVIDENCE—INSTRUCTIONS.

1. The remark, "Yes, it was an injustice to you not to let you testify in French," made by the state's attorney to a state witness who had been directed by the court to testify in English, was probably intended by way of sympathy with the witness rather than criticism of the court, but, whether intended in the one way or the other, or in both ways, was not likely to have worked any prejudice to the accused, and affords no ground for setting aside the verdict.

2. In a prosecution for murder said to have been committed on a farm of which the accused had charge for the owner, the latter, being on the stand as a witness for the defense, was asked, "What instructions did you, as employer of the accused in charge of your Prairie Farm, give him as to the policing of the place?" and the objection of irrelevancy was made thereto and sustained. This was reversible error; the jury should have been allowed to judge the accused in the light of the quality in which he was acting, as well as of the circumstances by which he was surrounded.

3. It appears from the transcript that the counsel for the accused requested the court to instruct the jury "that where A. is charged with the murder of ———, and it appears that the deceased died from the effects of a wound several days after he was struck, it is incumbent on the state to prove that the wound from which he died was the same as that inflicted by Halliday." Assuming the requested charge to have been formulated as it thus appears, the trial judge was justified in refusing to give it as "inapplicable to the facts."

4. In a prosecution for murder it is reversible error to give the following charge, to wit: "That in cases of manslaughter there must be shown to you some provocation justifying the accused to believe that he was in fear of great bodily harm, or that his life was in danger at the moment that he acted. The provocation must arise from overt act or demonstration on the part of the [deceased] which should convince the ordinary person, of ordinary courage, that then and there his life was in danger, or that then and there (?) suffer great bodily harm. If these facts and circumstances do not exist at the moment and time, then the person committing the act resulting in death is guilty of murder, because the provocation justifying him to act does not exist."

The jury might well have assumed from this charge that the accused was guilty of manslaughter, notwithstanding that he had made out a case of justifiable or excusable homicide.

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; T. Don Foster, Judge.

William Halliday was convicted of manslaughter, and appeals. Reversed.

Burke & Burke, for appellant. Walter Guion, Atty. Gen., and Edward S. Broussard, Dist. Atty. (Lewis Guion, of counsel), for the State.

MONROE, J. The defendant in this case, who was indicted for murder, having been convicted of manslaughter and duly sentenced, presents his case to this court by means of certain bills of exception, to wit:

1. Elinor Broussard, a state witness, having asserted that he could not testify in English, was examined by the judge, who, being satisfied to the contrary, ordered him to do so. Thereafter, on redirect examination, he was asked whether he had made a statement attributed to him by the counsel for the defendant, to which he replied that if he had it was because he could not explain himself in English, whereupon the district attorney remarked, in the presence and hearing of the jury, "Yes, it was an injustice to you not to let you testify in French." And thereupon the counsel for the defendant interposed the objection "that the conduct of the dis-

trict attorney was prejudicial to the interests of the defendant, in inducing the jury to believe that injury or wrong was being done to the state." And the bill proceeds to recite that no statement was made to the jury by the court to counteract such prejudice. There seems, however, to have been no request for any ruling. We take it that the remark of the state's attorney was probably intended by way of sympathy with the witness rather than criticism of the court, but whether intended in the one way or the other, or in both ways, it was not likely to have worked any prejudice to the accused, and affords no ground for setting aside the verdict.

2. Edward McIlhenny, a witness for the defendant, was asked on direct examination: "What instructions did you, as employer of the accused, in charge of your Prairie Farm, give him as to the policing of the place?" To this the state's attorney objected "that the question is illegal, irrelevant, and entirely disconnected with the case at issue; and, further, that it is not shown that on that particular day accused was in discharge of his duties as employé of McIlhenny, but, on the contrary, it had been shown to the court and jury that the accused and a large crowd of people of his color were at a picnic, where the deceased was also, for having a good time, this having happened on a Sunday; and, further, that no one can give authority to an employé to take a human life."

In the bill of exception it appears that the counsel for defendant stated to the court:

"That the purpose of the question was to show that the accused was the keeper and custodian of the farm belonging to Mr. McIlhenny, and that he was in charge there, under special instructions to prevent any disturbances occurring thereon, and that it was on this farm that the difficulty occurred."

In the memorandum of the proceedings which is attached to and made part of the bill, the statement appears as follows:

"Counsel for the defendant stating to the court that the purpose of the question was to show that Halliday, the accused, was that day acting in the discharge of his duties as employé, and that the difficulty arose as a consequence thereof, and this for the purpose of enabling the jury to determine the malice vel non of the accused."

The objection having been sustained and the question excluded, the bill of exception was taken. Our learned Brother of the district court gives no reasons for the ruling complained of, in which, we think, there is reversible error.

True it is that "no man can give authority to an employé to take human life." Upon the other hand, any man can give to an employé such authority as that the taking of human life in the exercise thereof will be excused, whereas it would not be excused if the authority had not been given. The memorandum of proceedings attached to the bill now under consideration shows that the witness testified that the accused had charge of a certain farm, and the counsel for the accused proposed to show the extent and limitation of his authority. It may be that he was authorized to allow the farm to be used for picnics, subject to the condition that they should be conducted in a decent and orderly manner, of which he, perhaps, was made the judge; and if, in fact, he was so authorized, his relations to the participants in the picnic at which the homicide is said to have occurred were quite different from those of a mere stranger, for he had the right to remonstrate with or eject them for a violation of the conditions upon which they had been allowed the use of the property, whilst a stranger would have had no such right. The jury should therefore have been allowed to judge the defendant in the light of the quality in which he was acting, as well as of the circumstances by which he was surrounded.

3. From this bill it appears that the judge was requested to instruct the jury "that where A. is charged with the murder of ——, and it appears that the deceased died from the effects of a wound, several days after he was struck, it is incumbent on the state to prove that the wound from which he died was the same as that inflicted by Halliday," which instruction the judge refused to give on the ground that it would have been inapplicable to the facts.

Assuming the requested charge to have been formulated as it thus appears, it was properly refused for the reason given.

4. The defendant excepted to the charge as given by the court, "that, in cases of manslaughter, there must be shown to you some provocation justifying the accused to believe

that he was in fear of great bodily harm, or that his life was in danger at the moment that he acted. The provocation must arise from overt act or demonstration on the part of the accused [deceased], which should convince the ordinary person, of ordinary courage, that then and there his life was in danger, or that then and there (?) suffer great bodily harm. If these facts and circumstances do not exist at the moment and time, then the person committing the act resulting in death is guilty of murder, because the provocation justifying him to act does not exist."

The jury might well have assumed from this charge, as applied to the facts disclosed, that the accused was guilty of manslaughter, although he may have acted in self-defense, and have made out a case of justifiable or excusable homicide.

There are other bills in the record, which are not pressed upon the attention of the court and need not be considered.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from be, and the same is, annulled, avoided, and reversed, and that this cause be remanded to be proceeded with according to law.