LAND, J.
 

 Under an indictment for cutting and thrusting one George Kennedy with a knife, with intent to kill and murder, the defendant was convicted of cutting with intent to kill, and was sentenced to imprisonment,in the state penitentiary at hard labor for a period of not less than one year nor more than three years.
 

 The errors complained of in the trial in the lower court are embodied in seven bills of exceptions.
 

 Bill No. 1.
 

 On direct examination, the district attorney propounded to a state witness the following questions: “Were they drinking then?” and, “What were they doing?” Objections made to the evidence sought to bo elicited on the ground that it was irrelevant, immaterial, and too remote were overruled by the trial judge.
 

 It appears from the note of evidence that the district attorney attempted to prove that the defendant, in company with another party, was drinking at his home at 9 o’clock, and that the difficulty took place at 1 o’clock.
 

 A bill of exceptions to the admissibility of evidence should show its materiality, relevancy, reception, and probable injury to the accused. State v. Woods, 112 La. 617, 36 So. 626.
 

 
 *906
 
 A bill to the admission of certain evidence as irrelevant should adduce such reasons and circumstances as show that the ruling was incorrect, and should show how the accused was injured by the reception of such irrelevant evidence. State v. Johnson, 36 La. Ann. S52.
 

 The bill fails entirely to advise this court wherein the ruling of the judge a quo was erroneous, and we are not in a position to say that the ruling complained of caused injury, and, unless injury is shown, the verdict cannot be set aside. State v. Campbell, 134 La. 828, 64 So. 765.
 

 Bills Nos. 2, 3, 4, and 5.
 

 As all of these bills deal with the question, directly or indirectly, of the right of defendant- to test the bias or feeling against him of the prosecuting witness, George Kennedy, We shall discuss the four bills in globo.
 

 The district attorney objected to the following questions propounded on cross-examination by counsel for defendant to the prosecuting witness, George Kennedy: “Have yon any hard feeling against the defendant, Jules Wilson?” and, “Were yon present at a certain time and place when Cube Kennedy cut a man by the name of Eli Singletary?”
 

 Before these objections to the admission of the evidence were sustained by the trial judge, the defendant offered to produce Singletary and to- prove by him that, at the time he was cut by Cube Kennedy, George Kennedy was present and made the remark: “Cube, you got one of the Wilsons and Singletarys, and I am going to get one of the Wilsons, and I mean Jules Wilson,” the defendant in this ease.
 

 Defendant also offered to prove by the same witness that George Kennedy, the prosecuting witness, declared in the presence of other persons in a restaurant in Covington as Jules Wilson, the defendant, walked out of the restaurant: “I am going to kill that s-of a b-some day.”
 

 Defendant also offered to prove by Cal Parker and Oscar Parker that George Kfennedy, the chief prosecuting witness, came to the home of Cal Parker looking for the defendant, Jules Wilson, and made a statement to defendant’s brother, Gula Wilson, that “he had come there to get Jules Wilson,” and that, at that time and place, they removed from the person of George Kennedy a pistol.
 

 Defendant also offered to prove that, at the same time and place, the hostility of George Kennedy was such that he informed the brother of defendant, Gula Wilson, that he could take up the fight of defendant, and ■ that George Kennedy and Gula Wilson retired from the home and engaged in a difficulty.
 

 The following reasons for refusing to admit the above testimony on behalf of defendant are given by the trial judge in his per curiam to bill No. 2: “The defendant'in this, ease, Jules Wilson, is charged by a' bill of indictment returned by the grand jury with the crime of cutting with intent to kill and murder one George Kennedy, being the witness on the stand. The question propounded by counsel to the witness when tendered for cross-examination under the guise of seeking to test his credibility is an attempt to introduce previous threats indirectly. ' 'No foundation has been laid for introduction of previous threats, either communicated or uncommunicated; not a scintilla of evidence has been introduced upon the trial of this case to show that there was any overt act or hostile demonstration on the part of the prosecuting witness, and the court is of the opinion that under no pretext or guise can previous threats be introduced without first laying the proper foundation, and for that reason
 
 *908
 
 the court sustains the objection of the State and excludes the testimony.”
 

 As defendant made no attempt whatever to show any self-defense based upon an overt act or hostile demonstration upon the part of Kennedy at the time of the cutting, it is clear that previous threats were inadmissible to establish a plea of self-defense, and could not have done so legally, if admitted, even had such threats established bias or prejudice on the part of Kennedy against the defendant.
 

 We fail, therefore, to see wherein defendant has been prejudiced by the exclusion of the testimony offered to prove bias or prejudice on the part of Kennedy, the injured party. Whether Kennedy was biased or not, the trial judge states most positively that
 
 “not a scintilla of evidence
 
 has been introduced upon the trial of this case to show that .there was
 
 any overt act or hostile demonstration on the part of the prosecuting -witness.”
 

 It is rather late in the day to depart from the repeated decisions of this court on the subject by permitting a plain violation of the established rule through any indirection, guise, or pretext.
 

 In State v. Harvey, 159 La. 685, 106 So. 32, it is announced that: “The uniform jurisprudence in this State is to the effect that evidence of previous threats or of the dangerous character of the deceased, on the trial of a prosecution for murder, is not admissible until an overt act or a hostile demonstration has been proven to the satisfaction of the trial judge. See, also, State v. Boudreaux, 137 La. 227, 68 So. 422 and authorities therein cited. (Also State v. Varnado, 131 La. 952, 60 So. 627.)”
 

 The rule invoked by defendant in this case would upset the uniform jurisprudence of the state, and mislead juries into acquittals in criminal cases, in which previous threats are admitted to prove the mere bias or feeling of the prosecuting witness, although there was no proof of an overt act or hostile demonstration upon the part of the injured party at the time the crime was committed by the defendant.
 

 We know of no case in which previous threats have been held admissible by this court for such purpose. There is no such exception to the general rule of the inadmissibility of previous threats in the absence of proof of overt act or hostile demonstration upon the part of the injured party. We therefore find no error in the rulings complained of under these bills of exceptions.
 

 Bills Nos. 6 and 7.
 

 These bills were reserved to the action of the court in overruling the objection of the defendant to the sheriff and one of his deputies testifying for the state in rebuttal, on the ground that these officers had been separated with other witnesses and had violated the rule by remaining in the courtroom during the trial of the case.
 

 In our opinion, the ruling of the judge a quo was correct. The presence of the sheriff and his deputies in the courtroom during the trial of a criminal case is necessary to the orderly conduct of the business of the court. Besides, the matter of separation of witnesses is one in the sound discretion of the trial judge. State v. Bates, 140 La. 833, 74 So. 165.
 

 The conviction and sentence appealed from are affirmed.
 

 O’NIELL, O. X, dissents from the ruling on bills 2, 3, 4, and 5.
 

 . OVERTON and ST. PAUL, XL, dissent on bills 2, 3, 4, and 5.